EDDIE LEE WALTON, Plaintiff in Error, v. FLOYD
GUTHRIE, d/b/a GUS' DRIVE-IN, Defendant in Error.
—362 S. W. (2d) 41.

Western Section at Jackson. April 22, 1962.

Certiorari Denied by Supreme Court November 9, 1962.

384

Saul Kay, Memphis, for plaintiff in error.

James W. McDonnell, Jr., Memphis (Canada, Russell & Turner, Memphis, of counsel), for defendant in error.

BEJACH, J. In this opinion, the parties will be referred to as plaintiff and defendant, Eddie Lee Walton, the plaintiff in error, having been the plaintiff in the lower court, and Floyd Guthrie, d/b/a Gus' Drive-In, the defendant.

Suit was originally filed in the Circuit Court of Shelby County September 3, 1958, where it was tried; but after presentation of proof by plaintiff and defendant, plaintiff took a voluntary nonsuit. His suit was filed again on May 5, 1960. At the second trial, after presentation of proof by both plaintiff and defendant, the defendant moved for a directed verdict, which motion was granted. Thereafter, plaintiff moved for new trial which was overruled; after which, he perfected his appeal in the nature of a writ of error. In this court, as appellant, plaintiff has filed three assignments of error, which are as follows:

## "I.

"The court erred in ruling that a sale of packaged food in a drive-in restaurant to be consumed off the premises was not a sale of goods as would imply warranties of quality and/or fitness, as set out in T. C. A., sec. 47-1215, subsecs. (1) and (2).

## "II.

"The court erred in ruling that the sale of a barbecued ham hock containing staphylococci bacteria and their toxins, did not violate the Tennessee Pure Food and Drug Act, (T. C. A. sec. 52-103, subsecs.

(a), (b), and (c), and sec. 52-110, subsec. (a)-(1) through (4)), as a matter of law.

## "III.

"The court erred in ruling as a matter of law that the barbecued ham hock prepared and sold by the defendant was not the proximate cause of the plaintiff's personal injuries."

■ Before disposing of the plaintiff's assignments of error, we must first dispose of a motion made by him for certiorari, on suggestion of diminution of the record. By this motion, plaintiff seeks to bring before the court the rulings made by the trial judge during the reading of the deposition of Dr. James R. Shelton, which rulings were omitted from the bill of exceptions as filed and signed by the trial judge. This motion for certiorari, on suggestion of diminution of the record, must be denied. What plaintiff is seeking is not a correction of the record, but a correction of the bill of exceptions, which is itself only a part of the record. Such correction cannot be permitted. State for Use and Benefit of Henderson County ex rel. Hanover v. Stewart, 46 Tenn. App. 75, 82, 326 S. W. (2d) 688; Cosmopolitan Life Ins. Co. v. Woodward, 7 Tenn. App. 394; Kennedy v. Kennedy, 84 Tenn. 736; Steele v. Davis, 52 Tenn. 75; Prudential Ins. Co. v. Sambucetti, 1 Tenn. Civ. App. 127. In Ballard v. Nashville & K. Railroad Co., 94 Tenn. 205, 28 S. W. 1088, the Supreme Court held that the trial judge might not amend a bill of exceptions, even under agreement between the lawyers in the case, approved by the judge, which authorized such amendment.

The facts of this case are as follows:

The plaintiff, a colored man 44 years old, on June 16, 1958 at about 10:00 o'clock A.M., accompanied by his wife, went to Gus' Drive-In, operated by defendant, where plaintiff purchased a barbecued ham hock. This was delivered at a side door of the defendant's place of business, to be eaten off the premises. Same was wrapped in white paper and placed in a sack. Plaintiff and his wife drove away and immediately began eating the ham hock. According to their testimony, as they ate close to the bone they noticed that "it didn't smell right"; and they said it had a peculiar taste. According to the testimony of plaintiff and his wife, this ham hock was the first food they had eaten that day, and they had eaten nothing since the evening meal of the night before, some 18 or 19 hours earlier. They did not remember what they had eaten the previous night. Plaintiff and his wife drove immediately to the home of his daughter where he became violently ill. Plaintiff was then driven to the office of his physician, Dr. James Shelton. Dr. Shelton was not in, so his nurse sent plaintiff to the John Gaston Hospital, where his condition was diagnosed as "gastro enteritis due to food poisoning of an undetermined type". After treatment there, he was discharged from the hospital three days later. Three days after being discharged from the hospital, on June 22nd, which was six days after eating the ham hock, plaintiff went to see Dr. Shelton, when and where, based on plaintiff's history of the case, Dr. Shelton diagnosed plaintiff's complaint as "staphylococeal enteritis infection". Part of plaintiff's history given to Dr. Shelton was that he had become ill one hour after eating the ham hock; whereas, based on his testimony as to the time estimated for driving to his daughter's home and as to the length of time after arriving there before

he became ill, it appears that the illness occurred somewhat less than one hour after eating the ham hock.

The plaintiff introduced the deposition of Dr. Howard Boone, a specialist in the practice of internal medicine. Dr. Boone did not treat or examine the plaintiff, but he testified as an expert witness. He said that gastro enteritis simply means inflammation of the stomach and intentines, and that it can be caused by many things other than the consumption of food, and can result from the consumption of noncontaminated food. Dr. Boone testified that there are two groups of food poisoning, viz., the staphylococcic type and the salmonella type. He testified that staphylococcic food poisoning is commonly found in potato salad, chicken salad, pastries, and other foods which are kept cold or cool, and that it is most unusual for it to be found in cooked food or foods which are kept hot. He said that illness from staph food poisoning usually manifests itself in one to four hours after the ingestion of the contaminated food, and that it would not cause illness in less than one hour. Furthermore, he testified that the active illness from staph food poisoning was for one day or less, and would not last three days. He testified that salmonella food poisoning is a type which customarily originates in cooked foods, and is the type which would be traceable to the consumption of barbecue. He said, however, that this food poisoning would not cause illness until 8 to 18 or 24 hours after consumption of the food. In answer to several hypothetical questions, he said that the illness of the type suffered by plaintiff would not be the result of staph food poisoning, that in a case such as is presented by these facts, unless the doctor knew what had been eaten for a period of time before, and examined the food, it would not be

possible to attribute the illness to any particular food. He said that the symptoms of which the plaintiff complained, were symptoms of other types of food poisoning than staph food poisoning, and were likewise symptoms of many types of gastro enteritis in addition to food poisoning.

Defendant and his cook, Paul Tappan, testified as to the method of inspecting the food purchased for defendant's restaurant, and narrated the precautions taken to insure that the food was not contaminated. Defendant also testified that his place of business is inspected periodically by both city and State inspectors, and that he has the "highest rating". Both defendant and his cook testified that all barbecue is cooked from ten to twelve hours, and is kept either in the hot barbecue oven or under refrigeration; and that a barbecued shoulder which is being served is kept under a flame while on the serving table. They also testified that ham hocks sell rapidly, and usually are sold before the entire shoulder has been sold. Defendant testified that he had never had a case of food poisoning except this one, and that in June of 1958 no other customer complained of food poisoning. He testified that Gus' Drive-In is a restaurant serving customers on the premises, although they do sell food to customers to be eaten away from the premises.

█ After a careful reading of the record in this cause, we find no evidence of negligence on the part of the defendant; consequently, if liability must be predicated on negligence only, it is clear that the trial judge ruled correctly in directing the verdict in favor of defendant. Indeed, both the assignments of error filed by plaintiff in this court and the assignments made in his motion for

new trial in the lower court, exclude the possibility of a reversal on the ground of negligence, only.

The principal contention of plaintiff in this court is that his cause of action should have been submitted to the jury on the ground that, under the provisions of the Uniform Sales Act, sec. 47-1215, T. C. A., subsecs. (1) and (2), the question of implied warranty of quality and fitness of the ham hock sold by defendant was one to be determined by a jury verdict.

The only Tennessee case which we have found, in which the doctrine of implied warranty of food was applied, is that of Thompson Co. v. Smith, 8 Tenn. Civ. Appeals 95. In that case, however, no petition for certiorari was filed and the opinion, itself, was later expressly disapproved by the Supreme Court in the unreported case of Petrucelli v. Green, opinion by Mr. Justice Hall, filed January 24, 1925. Counsel for plaintiff, however, present and rely on the unreported case of Mrs. Mary White v. East Tenn. Packing Co., decided by the Court of Appeals, Eastern Section, opinion by Hale, J., filed August 15, 1947, which case reversed a peremptory instruction in favor of defendant, granted in the trial court. There is in that case, however, a concurring opinion by Presiding Judge McAmis which excludes breach of implied warranty as a ground for liability, and in a per curiam opinion of the Supreme Court denying certiorari, filed October 3, 1947, the question of implied warranty is expressly pretermitted. The concurring opinion of Presiding Judge McAmis also points out that, in the case of Hoback v. Coca Cola Bottling Works, 20 Tenn. App. 280, 283, 98 S. W. (2d) 113, it was held that the provisions in the Uniform Sales Act for liability for

breach of an implied warranty of fitness, are merely declaratory of the preexisting law.

■ On authority of Hoback v. Coca Cola Bottling Works, 20 Tenn. App. 280, 98 S. W. (2d) 113; Yates v. Coca Cola Bottling Works, 14 Tenn. App. 7; Coca Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S. W. (2d) 721; 171 A. L. R. 1200; and Bell v. Bowers Stores, Inc., 3 Tenn. App. 590, we hold that proof of negligence on the part of defendant, together with proof of causal connection between such negligence and the plaintiff's injury are prerequisite to any holding of liability on the part of defendant; and, consequently, that the question of whether or not defendant could be held liable for violation of section 47-1215, T. C. A.. subsec. (1) and (2), was properly withdrawn from the jury in this case.

■ In the case of Petrucelli v. Green, the Supreme Court adopted the ruling of the weight of authority in this country to the effect that, in the absence of a statute changing the law, one serving food to be immediately consumed on the premises is neither an insuror of the fitness and wholesomeness of the food served, nor liable under an implied warranty thereof. While it is true, in the instant case, the ham hock purchased by plaintiff was not consumed on the premises of defendant, nevertheless, it was purchased at defendant's establishment maintained for the purpose of serving food to be consumed on the premises, and was delivered to plaintiff from food being thus served.

■ Contention of plaintiff that the sale to him of the barbecued ham hock which contained staphylococci bacteria and their toxins, was in violation of the Tennessee Pure Food and Drug Act—T. C. A. sec. 52-103, subsecs.

(a) (b) (c), and sec. 52-110, subsec. (a)—(1) through (4), —is without merit because there is not a scintilla of evi dence in the record that said ham hock was adulterated or contained deleterious ingredients.

The case of Jones v. Mercer Pie Co. 187 Tenn. 322, 214 S. W. (2d) 46, relied on by plaintiff, is not in point in the instant case because in that case the ruling of the Court of Appeals reversing a directed verdict for defendant was expressly approved by the Supreme Court on the ground that plaintiff had offered evidence tending to show violation of the statute regulating the operation of defendant's pie factory, which violation constituted negligence per se.

■ With reference to plaintiff's assignment of error III that "The Court erred in ruling as a matter of law that the barbecued ham hock prepared and sold by defendant was not the proximate cause of plaintiff's personal injuries", it is the contention of counsel for defendant that this assignment of error cannot be considered by this court because same was not included in plaintiff's motion for new trial filed in the lower court. We think this objection is well taken. Rule 11, paragraphs (4) and (5) of the Rules of this Court, provide as follows:

"(4) No assignment of error in any case brought to this court for review can be predicated upon any alleged error of the trial court consisting of an omission or affirmative action in the organization of the court or jury, or for any defect in the pleadings, or for any mistake, irregularity or error in the conduct of the case, unless it affirmatively appears in the record that the omission, action, defect, or error was seasonably called to the attention of the trial judge

and ruled on adversely to the party complaining, otherwise same will be treated as having been waived or cured in the trial court.

"(5) Error in the admission or exclusion of testimony in charging a jury, or refusing further instructions, misconduct of jurors, parties or counsels; or other action occurring or committed in the trial of the case, or other ground upon which a new trial is sought will not constitute a ground for reversal and a new trial, unless it affirmatively appear that the same was specifically stated in the motion made for a new trial in the lower court, and decided adversely to the plaintiff in error, but will be treated as waived; nor will any supposed matter in arrest of judgment be considered unless it appears that the same was specifically stated in a motion, seasonably made in the trial court, for that purpose, and held insufficient."

All of plaintiff's assignments of error will be overruled and the judgment of the lower court dismissing plaintiff's cause of action will be affirmed at the cost of plaintiff, Eddie Lee Walton.

Avery, P. J. (W. S.), and Carney, J., concur.